UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EARNEST BRIDGES,

    Plaintiff,

        v.                              Civil Action No. 11-1353 (JEB)

LEZELL LAW, PC, *et al.*,

    Defendants.

### MEMORANDUM OPINION

    Plaintiff Earnest Bridges has brought this suit against five defendants, contending that they defrauded him out of $70,000 in connection with an unsuccessful investment. The Court has now given Plaintiff multiple chances to demonstrate why federal jurisdiction exists here. As his latest effort in his proposed Third Amended Complaint stills falls short, the Court will dismiss the case so that, if he chooses, he may refile in the appropriate state court and pursue his common law claims there.

**I.    Background**

    Plaintiff filed his initial Complaint in this matter on July 25, 2011. He named five different defendants, two of whom subsequently moved to dismiss on Aug. 26 and Sept. 7, respectively. On Sept. 19, Plaintiff filed an Amended Complaint without seeking leave of court as required in Fed. R. Civ. P. 15(a)(1)(B). That document named only two defendants. On Oct. 25, he moved to file a Second Amended Complaint, reasserting claims against the original five defendants. Defendant Lezell Law PC then opposed such Motion, arguing that the proposed

Second Amended Complaint was deficient in its failure to establish federal subject matter jurisdiction.

The Court agreed, and in a Memorandum Opinion and Order of Nov. 22, denied the Motion. The Court concluded that Plaintiff's proposed Second Amended Complaint neither established diversity of citizenship, as it claimed, nor contained a sufficiently articulated federal cause of action. See ECF No. 12. The Court permitted Plaintiff one more shot at establishing subject matter jurisdiction. To that end, the Court warned Plaintiff that he "should well consider whether this $70,000 commercial dispute (even if contended to be fraudulent) is appropriately dressed up into a RICO claim in order to obtain federal jurisdiction." See Mem. Op. at 2-3 (citing Arbaugh v. Y&H Corp., 546 U.S. 500, 513 n.10 (2006) ("A claim invoking federal-question jurisdiction under 28 U.S.C. § 1331 . . . may be dismissed for want of subject-matter jurisdiction if it is not colorable, *i.e.*, if it is immaterial and made solely for the purpose of obtaining jurisdiction . . . .")). The Court explained that if Plaintiff "decide[d] to seek leave to refile again in this Court, any purported federal-question claim will draw careful scrutiny." Id. at 3.

Plaintiff has chosen to aim for the federal target yet again. In his Motion for Leave to File Third Amended Complaint, Plaintiff has abandoned any reliance on diversity and, instead, places all of his eggs in the federal-question basket. See Motion, Exh. A (Proposed Third Amended Complaint) at 6. Specifically, in addition to his common-law claims for breach of contract, civil conspiracy, negligence, and fraud, he alleges "Conspiracy to Violate RICO." Id. at 16. Defendant Lezell Law has once again opposed the filing of this latest Complaint on the ground that it still does not sufficiently allege a federal claim.

**II.     Legal Standard**

A plaintiff may amend his complaint once as a matter of course within 21 days of serving it or within 21 days of the filing of a responsive pleading. Fed. R. Civ. P. 15(a)(1). Otherwise, the plaintiff must seek consent from the defendant or leave from the Court. The latter "should [be] freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). In deciding whether to grant leave to file an amended complaint, courts may consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (U.S. 1962). In this Circuit, "it is an abuse of discretion to deny leave to amend unless there is sufficient reason." Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996). Furthermore, under Rule 15, "the non-movant generally carries the burden in persuading the court to deny leave to amend." Nwachukwu v. Karl, 222 F.R.D. 208, 211 (D.D.C. 2004).

It is clear, however, that amendment should not be permitted if it would be futile. In other words, if the proposed amendment would still render the complaint deficient, courts need not grant leave. See In re Interbank Funding Corp. Securities Litigation, 629 F.3d 213, 218 (D.C. Cir. 2010) ("[A] district court may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss.") (citing Forman, 371 U.S. at 182, for proposition that "'futility of amendment' is permissible justification for denying Rule 15(a) motion"); James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996) ("Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss.").

**III.   Analysis**

The question, therefore, upon which this Motion turns is whether Plaintiff has sufficiently pled a cause of action under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962. If he has not, then the Court has no jurisdiction over his suit. In order to satisfy RICO, a plaintiff must allege the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985). To show such a pattern, RICO requires at least two predicate criminal racketeering acts over a ten-year period. See 18 U.S.C. § 1961(5). "[T]hese predicate offenses are acts punishable under certain state and federal criminal laws, including mail and wire fraud." Western Associates Ltd. Partnership ex rel. Ave. Associates Ltd. v. Market Square Associates, 235 F.3d 629, 633 (D.C. Cir 2001) (citing 18 U.S.C. § 1961(1)(B)).

The Supreme Court has further ruled that these predicate acts must show elements of relatedness and continuity. See H.J. Inc. v. Northwestern Bell Telephone Company, 492 U.S. 229, 239 (1989). In other words, a plaintiff must show "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." Id. In determining whether or not this continuous pattern is established, there are a number of factors to be considered: "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity ... as they bear upon the separate questions of continuity and relatedness." Edmondson & Gallagher v. Alban Towers Tenant Association, 48 F.3d 1260, 1265 (D.C. Cir. 1995) (quoting Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1411-1413 (3rd Cir. 1991) (internal quotation marks omitted)). "[I]n some cases 'some factors will weigh so strongly in one direction as to be dispositive,' . . . [while in others,] if a plaintiff alleges only a single

scheme, a single injury, and few victims it is 'virtually impossible for plaintiffs to state a RICO claim.'" Western Assoc., 235 F.3d at 634 (quoting Edmondson & Gallagher, 48 F.3d at 1265).

It is notable, furthermore, that "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it. This caution stems from the fact that [i]t will be the unusual fraud that does not enlist the mails and wires in its service at least twice." Id. at 637 (internal quotation marks and citations omitted). "The pattern requirement thus helps to prevent ordinary business disputes from becoming viable RICO claims." Id. Put another way, "[i]f the pattern requirement has any force whatsoever, it is to prevent ... ordinary commercial fraud from being transformed into a federal RICO claim.... If we were to recognize a RICO claim based on the narrow fraud alleged here, the pattern requirement would be rendered meaningless." Id. As a result, a "plaintiff must plead 'circumstances of the fraudulent acts that form the alleged pattern of racketeering activity with sufficient specificity pursuant to Fed. R. Civ. P. 9(b).'" Menasco, Inc. v. Wasserman, 886 F.2d 681, 684 (4th Cir. 1989), cited with approval on RICO "pattern" question by, Western Assoc., 235 F.3d at 637. This rule "normally ... means that the pleader must state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." Kowal v. MCI Communications Corp., 16 F.3d 1271, 1278 (D.C. Cir. 1994) (quoting United States v. Cannon, 642 F.2d 1373, 1385 (D.C. Cir. 1981) (internal quotation marks omitted)).

In his proposed Third Amended Complaint, Plaintiff alleges that some of the Defendants discussed raising money for a movie deal. Id., ¶¶ 9-10. Defendant Bernadette Clay, a CPA, informed Plaintiff "that if he invested $70,000 he would be repaid $140,000 within thirty (30)

days, and that there was no possibility that his funds could be lost." Id., ¶ 12. Plaintiff then paid that sum into Defendant Lezell's escrow account. Id., ¶ 17. The Complaint alleges that all Defendants fraudulently caused Plaintiff to invest his money and that they failed to return any of it. Id., ¶¶ 20, 24. Plaintiff alleges that Defendants formed "an enterprise" to "conduct joint ventures and investment business through both legitimate and illegitimate means." Id., ¶ 27. Plaintiff alleges that between August 2009 and January 2010, Defendants sent emails in furtherance of their scheme to defraud him. Id., ¶ 49. Plaintiff alleges that "all of these communications were made in violation of the mail and wire fraud statutes." Id., ¶ 62. Finally, the "enterprise was used to defraud not only Earnest Bridges, but also Nadir Tawil, Esq., Lucy Lu and approximately 15 other unnamed individuals in the Washington Metropolitan Area." Id., ¶ 28. No details are provided regarding any of these other frauds on any other victim beyond the single sentence quoted here.

Plaintiff here has thus alleged that Defendants got together to defraud him out of his $70,000 investment and that they sent numerous emails in furtherance of such scheme over a five-month period. They also allegedly defrauded others, but there is no explanation of any particular. This may well be enough to proceed on the tort of intentional misrepresentation or on a claim for breach of contract, but it does not nearly suffice for RICO.

First and foremost, this is a single scheme with a single injury to a single specified victim. The one-sentence amorphous reference to others is hardly sufficient to change this characterization of the allegations, particularly given the stringent pleading rules regarding fraud. As the D.C. Circuit has held, in such a circumstance, it is "virtually impossible for plaintiffs to state a RICO claim." Western Assoc., 235 F.3d at 634 (internal citation and quotation marks omitted). "[W]e do not understand the Supreme Court to disparage interpreting RICO's pattern

requirement to guard against finding continuity too easily in the context of a single dishonest undertaking involving mail or wire fraud." Id. at 636-37 (internal quotation marks and citation omitted).

Second, there is no threat of continued criminal activity. In H.J. Inc. v. Northwestern Bell Telephone Company, 492 U.S. 229, 239 (1989), the Supreme Court held that it was possible to establish a pattern of racketeering activity even in single-scheme cases. Id at 240. The Court, however, also held that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." Id. at 242. Here, Plaintiff himself concedes that this is a "closed period of repeated conduct." See Third Am. Compl., ¶ 53. The single scheme over a few months with no threat of continued activity is plainly insufficient. Cf. Pyramid Securities, Ltd. v. IB Resolutions, Inc., 924 F.2d 1114, 1119 (D.C. Cir. 1991) (rejecting idea that open-ended continuity could be based on mere hypothetical conjecture, instead demanding that the plaintiff establish something more concrete); Edmondson & Gallagher, 48 F.3d at 1264 ("In this case, the plaintiffs point to nothing suggesting any reason to expect that these defendants, together or separately, will again engage in RICO-violating conduct. The only possible rationale that could support such a prediction-once a RICO violator, always a RICO violator-would deprive the pattern requirement of all meaning by establishing open-ended continuity whenever two or more predicate acts were shown.").

Third, the time involved here is too short: Plaintiff alleges actions that took place over a mere five months. In Edmondson & Gallagher, the D.C. Circuit found that a time period of three years and fifteen predicate acts were "not enough to overwhelm the three narrowing factors" of single scheme, single injury, and a few victims. 48 F.3d at 1265. Such a short span here and limited predicate acts clearly cannot overcome the same narrowing factors here.

In refusing to permit Plaintiff leave to proceed on his RICO claim, the Court is following the course set out by the D.C. Circuit and similarly followed by a number of courts in this District. See id. (affirming dismissal of RICO claim alleging single scheme with single injury and single victim); Western Assoc. (affirming dismissal of another single-scheme, single-victim, single-injury RICO case despite plaintiff's attempt to break down events into multiple schemes); Busby v. Capital One, N.A., 772 F. Supp. 2d 268, 282 (D.D.C. 2011) (granting motion to dismiss RICO claim for failing to establish sufficient pattern in a single-scheme, single-injury set of facts); Harpole Architects, P.C. v. Barlow, 668 F. Supp. 2d 68, 75 (D.D.C. 2009) (granting motion to dismiss because of existence of only single scheme to steal from single victim); Lopez v. Council on American-Islamic Relations, 657 F. Supp. 2d 104, 114 (D.D.C. 2009) (granting motion to dismiss because limited number of communications occurring over course of few months did not create pattern); Zernik v. Department of Justice, 630 F. Supp. 2d 24, 27 (D.D.C. 2009) ("Each and every [one] of plaintiff's alleged predicate racketeering offenses, however, relates solely to the compelled sale of plaintiff's house in 2007. As such, plaintiff fails, at a minimum, to allege a pattern of racketeering activity, as his claims relate to a single alleged scheme, for which he was the sole injured party.").

Finally, to the extent Plaintiff somehow believes he could circumvent such a result through the pleading of a RICO conspiracy under § 1962(d), he would be mistaken. See Edmondson & Gallagher, 48 F.3d at 1265 ("Further, as the allegations provide no basis for inferring any conspiracy broader than the alleged scheme itself, the § 1962(d) claim fails as well; there is no conspiracy to violate any of the provisions of subsection (c).") (internal quotation marks omitted).

As Plaintiff, therefore, cannot establish federal subject matter jurisdiction, his case must be dismissed. Given that he has set forth common law claims upon which he may proceed, a full dismissal with prejudice would not be appropriate. The Court will thus dismiss his non-RICO claims without prejudice so that he may refile, if he so chooses, in the appropriate state court.

## IV.     Conclusion

The Court, accordingly, will issue a contemporaneous order this day denying Plaintiff leave to file his Third Amended Complaint and dismissing the case with prejudice as to his RICO claim and otherwise without prejudice.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  February 8, 2012